[No. G018893. Fourth Dist., Div. Three. Feb. 13, 1997.]

JAMES WHELAN, Plaintiff and Respondent, v.
LINDA PICK RALLO, as Co-administrator, etc., et al., Defendants and
Appellants.

**COUNSEL**

Greenberg & Bass, William E. Crockett and James R. Felton for Defendants and Appellants.

Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone and Steven H. Gentry for Plaintiff and Respondent.

## OPINION

**WALLIN, J.**—The estate of Richard Pick appeals the judgment and related orders permitting James Whelan to enforce an undertaking on appeal, contending the trial court erred by denying the estate's motion to vacate that part of the underlying judgment awarding punitive damages against Pick. We affirm.

After jury trial, Whelan obtained a judgment against Richard Pick, Pick Systems, Tiger Ventures, and others, including punitive damages of $155,000 against Tiger Ventures and, after he consented to a reduction, $350,000 against Pick Systems and $250,000 against Pick. These defendants appealed, filed a bond, and posted a cash deposit totaling over $2 million.[1]

In an unpublished opinion, we affirmed the judgment, including the award of punitive damages. (*Whelan* v. *Rallo* (Apr. 26, 1993) G011185 [nonpub. opn.].) The Supreme Court granted review, and eventually transferred the cause to us for reconsideration under a new Supreme Court case. We ultimately affirmed the judgment, but in the interim, Pick died. (*Whelan* v. *Rallo* (May 31, 1995) G011185 [nonpub. opn.].)

Whelan brought motions under sections 995.760 and 996.440 to enforce liability for the judgment against the deposit and the bond.[2] The Pick estate brought motions to be substituted in Pick's place and to "vacate and/or amend" the judgment against Pick for punitive damages. The trial court granted the motion for substitution, denied the motion to vacate, and granted the motions to enforce the judgment.

▮ Pick's estate contends the trial court erred by denying the motion to vacate and granting the motion to enforce the judgment.[3] The estate argues section 377.42 prevents Whelan from recovering the damages. The section

---

[1] Code of Civil Procedure section 917.1 requires an undertaking (synonymous with a bond under section 995.210) be posted as a prerequisite to staying enforcement of a judgment pending appeal. Section 995.710 allows deposit of certain other assets with the clerk in lieu of a bond. All statutory references are to the Code of Civil Procedure unless noted otherwise.

[2] Section 995.760, subdivision (a) reads: "If the principal does not pay the amount of the liability on the deposit . . . the deposit shall be collected, sold, or otherwise applied to the liability upon order of the court that entered the judgment of liability . . . ." Section 996.440, subdivision (a) reads: "If a bond is given in an action or proceeding, the liability on the bond may be enforced on motion made in the court without the necessity of an independent action."

[3] Although neither party has raised the issue, we have considered whether the trial court's rulings are appealable. The judgment allowing enforcement of the underlying judgment is

reads: "In an action or proceeding against a decedent's personal representative or, to the extent provided by statute, against the decedent's successor in interest, on a cause of action against the decedent, all damages are recoverable that might have been recovered against the decedent had the decedent lived except damages recoverable under Section 3294 of the Civil Code or other punitive or exemplary damages."

The estate reasons changes in the language of section 377.42 from its predecessor, former Probate Code section 573, show the Legislature intended section 377.42 to apply if the defendant dies before an appeal becomes final. We disagree for several reasons: (1) case law has consistently held the right to punitive damages is extinguished only if the defendant dies before judgment is entered; (2) a 1961 amendment to Probate Code section 573 evinced an intent to incorporate that law; (3) the Legislature intended section 377.42 to continue the substantive rule of Probate Code section 573; and (4) policy reasons support that rule.

In *Evans* v. *Gibson* (1934) 220 Cal. 476 [31 P.2d 389], a defendant died before trial, but the court eventually awarded punitive damages against him. (*Id.* at pp. 478-479, 491.) The Supreme Court reversed that award, reasoning, "Since the purpose of punitive damages is to punish the wrongdoer for his acts, accompanied by [an] evil motive, and to deter him from the commission of like wrongs in the future, the reason for such damages ceases to exist with his death." (*Id.* at p. 490.)

The next year, in *Leavitt* v. *Gibson* (1935) 3 Cal.2d 90 [43 P.2d 1091], an action against the same defendant (see *Evans* v. *Gibson, supra,* 220 Cal. at p. 491), the court dealt with a scenario where the defendant had died after the

appealable, either as a judgment in a special proceeding (see *Millan* v. *Restaurant Enterprises Group, Inc.* (1993) 14 Cal.App.4th 477, 485 [18 Cal.Rptr.2d 198] [such judgments are appealable]), or as a judgment collateral to the underlying judgment (see *Steen* v. *Fremont Cemetery Corp.* (1992) 9 Cal.App.4th 1221, 1227 [11 Cal.Rptr.2d 780] [such matters are appealable]). Although the denial of a nonstatutory motion to vacate is generally not appealable, it is if it attacks an order on the ground it gives effect to a judgment that is void for lack of jurisdiction. (See *Adoption of Matthew B.* (1991) 232 Cal.App.3d 1239, 1267 [284 Cal.Rptr. 18]; but see *Sacks* v. *FSR Brokerage, Inc.* (1992) 7 Cal.App.4th 950, 957, fn. 5 [9 Cal.Rptr.2d 306] [judgment obtained without substitution of decedent defendant's personal representative not subject to collateral attack].) We presume Pick's estate would argue the trial court exceeded its jurisdiction in allowing Whelan to enforce the judgment against Pick for punitive damages, and Whelan would counter the underlying judgment was not void as rendered and that judgment is one on which we should focus our voidness inquiry. We have found no applicable law on the point. Out of an abundance of caution, we treat the appeal as being only from the judgment allowing Whelan to enforce the punitive damages portion of the underlying judgment.

evidence was concluded and the trial court awaited the plaintiff's overdue reply brief. The Supreme Court upheld the award of punitive damages, which the trial court had entered nunc pro tunc before the defendant's death. Against the claim the punitive damages did not survive the defendant's death, the court reasoned, "The judgment in this case has the same sanctity in law as any other judgment obtained in a court of law or equity could have. The trial was had in accordance with the statutory and procedural law of the state. It is a judgment in a civil case entitled to every presumption which comes to the aid of judgments. Appellants assail it on the ground that it is punitive in character and being so the action does not survive the death of the wrongdoer. This contention is not tenable. The cause was in a condition in which a judgment authorized by law could have been entered and should have been entered against the defendants, both for compensatory damages and exemplary damages. The Civil Code, section 3294, in defining such damages, provides in language too simple and clear to require interpretation, that 'in addition to the actual damages [the plaintiff], may recover damages *for the sake* of example, and by way of punishing the defendant'. [Original italics.] The object of the statute is plainly twofold. Such damages enter into and become a part of the judgment in a civil action. They are payable to the person wronged and when legally obtained they are governed by the same rule as governs a judgment in any other kind of civil action. There is no reason why a different rule should be formulated in such cases, than there would be for a different rule in cases of tort, or a simple action upon contract." (*Leavitt* v. *Gibson, supra,* 3 Cal.2d at p. 108.)

In *Simone* v. *McKee* (1956) 142 Cal.App.2d 307 [298 P.2d 667], the defendant died while the case was on appeal. (*Id.* at p. 312.) In answer to the apparent contention that the punitive damages award could not survive the defendant's death,[4] the court relied on *Evans* and *Leavitt* to hold, "The fact that appellant died after judgment was entered does not affect the right to exemplary damages. While exemplary damages cannot be allowed where a defendant dies before trial [citation], the right becomes vested with the entry of judgment and the subsequent death of the defendant has no effect on the award. [Citations.]" (*Simone* v. *McKee, supra,* 142 Cal.App.2d at p. 316.) Thus, as of 1956, the rule was that the availability of punitive damages was extinguished if the defendant died before the trial court entered judgment, but not if death occurred afterward.

In 1961, the Legislature amended Probate Code section 573 to expressly preclude an award of punitive damages "[i]n an action brought . . . against

---

[4]The opinion does not expressly state the contention.

an executor or administrator" of a decedent.[5] The California Law Revision Commission Comment to the amended section explained, "Although [the original legislation] does not expressly so provide, the California courts have held that punitive or exemplary damages or penalties may not be recovered against the estate of a deceased wrongdoer. This limitation should be continued." (3 Cal. Law Revision Com. Rep. (Oct. 1960) p. F-7.) The Law Revision Commission Comment that the amendment was intended to be declarative of existing law is of great weight in determining legislative intent. (See *People* v. *Simpson* (1986) 186 Cal.App.3d 1125, 1130 [231 Cal.Rptr. 200].)[6]

In 1992, the Legislature enacted sections 377.34 and 377.42 to replace Probate Code section 573. The Law Revision Commission Comment noted in relevant part: "Section 377.42 restates former Probate Code Section 573(b) *without substantive change . . . .*" (Italics added.) Despite this pronouncement, the estate argues changes in the statutory language connote a legislative intent to extend the section's prohibition against punitive damages to cases where the defendant dies while the case is on appeal. In doing so, it ignores the rule that unambiguously expressed legislative intent prevails over a literal construction of the statute. (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]; see also *People* v. *King* (1993) 5 Cal.4th 59, 69 [19 Cal.Rptr.2d 233, 851 P.2d 27].) There is express legislative intent to continue existing law.

Even if this were not so, we could not agree with the estate's construction of section 377.42. The estate claims the 1992 legislation "eliminated the 'before judgment' limitation on the award of punitive damages . . . ." But that language only appeared in the part of Probate Code section 573 concerning the death of a plaintiff. It did not appear in the part dealing with the death of a defendant.

The estate also points out section 377.42 applies "[i]n an action or proceeding," suggesting this connotes an intent that the section apply when the case is on appeal or in postjudgment collection proceedings. But it ignores the rest of the sentence: "In an action or proceeding against a

---

[5]In relevant part, the section read: "In an action brought under this section against an executor or administrator all damages may be awarded which might have been recovered against the decedent had he lived except damages awardable under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant." (Stats. 1961, ch. 657, § 2, p. 1867.)

[6]The estate argues the *Leavitt* and *Simone* courts could not have considered the effect of the 1961 amendment to Probate Code section 573. The estate has it backwards. We infer the Legislature considered those cases in amending the statute.

decedent's personal representative . . . *on a cause of action against the decedent . . . .*" " 'A valid final judgment in favor of the plaintiff *merges* the claim in the judgment. The cause of action is extinguished and the only remaining right of action is on the judgment.' [Citation.]" (*Sukut Construction, Inc.* v. *Cabot, Cabot & Forbes Land Trust* (1979) 95 Cal.App.3d 527, 530 [157 Cal.Rptr. 289]; see also *Jackson* v. *City of Sacramento* (1981) 117 Cal.App.3d 596, 601 [172 Cal.Rptr. 826]; 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 243, pp. 681-682.) After judgment, Whelan's cause of action "against the decedent" Pick, who was still alive when the judgment was entered, ceased to exist. Whelan was no longer pursuing an award of damages on a cause of action against Pick, he was resisting an appeal and attempting to recover the judgment.

The estate urges section 377.42 applies while the case is on appeal because an appealed action is "pending . . . until its final determination [on] appeal" (§ 1049), but that does not mean an action on appeal is "on a cause of action" for purposes of section 377.42. Indeed, an appeal can only be taken from a final judgment. (See *Brun* v. *Bailey* (1994) 27 Cal.App.4th 641, 648 [32 Cal.Rptr.2d 624].) When the trial court entered judgment, it was final and perfected as to the punitive damages award against Pick.

Policy reasons support our conclusion. The estate correctly notes that when it comes to applying the rule, punitive damages may not be awarded against a deceased defendant's estate, since the primary purpose is to punish and deter the wrongdoer. (*Evans* v. *Gibson, supra,* 220 Cal. at p. 490.) But that policy is served by making entry of judgment the dividing line. If the defendant is still alive, the judgment punishes the wrongdoer by establishing egregious conduct and liability for it. The wrongdoer would not be deterred from further wrongful conduct if the judgment merely provided an ephemeral specter of liability. If liability for punitive damages has been imposed improperly, the impetus is on the defendant to have that determined in as timely a fashion as possible. After judgment is entered, the plaintiff should not be required to bear the risk the defendant's death during the appeal process will work a de facto reversal of punitive damages otherwise properly imposed.

In this regard the rule is consonant with the policy behind requiring a bond or deposit on appeal: to assure collection of a money judgment and protect it against "passage of time, delay, *or other reasons.*" (*Grant* v. *Superior Court* (1990) 225 Cal.App.3d 929, 935 [275 Cal.Rptr. 564], italics added.) If we were to rule the defendant's death during appeal extinguished the judgment as to punitive damages, one of the "other reasons" would be allowed to

frustrate the purpose for the bond or deposit. Where, as here, the plaintiff obtains a money judgment for punitive damages, the defendant posts a bond and/or deposit and dies while the appeal is pending, the plaintiff may enforce the judgment, as Whelan did, against the bond or deposit.

The judgment is affirmed. Whelan is entitled to his costs on appeal.

Sills, P. J., and Sonenshine, J., concurred.

Appellants' petition for review by the Supreme Court was denied May 14, 1997.