Filed 10/3/23

# CERTIFIED FOR PUBLICATION

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THOMAS NASH et al., | B322796 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 21STCV28570) |
| v. | |
| NINON APREA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Armen Tamzarian, Judge.  Affirmed.

Sigelman Law Corp. and Paul Sigelman for Defendant and Appellant.

Linzer Law Group and Kenneth A. Linzer for Plaintiffs and Respondents.

_____

Thomas Nash and Bo O'Connor sued Ninon Aprea for breach of contract in connection with their rental of Aprea's home. Aprea failed to file an answer, and the trial court entered a default judgment for $59,191. The judgment included $1,000 in attorneys' fees pursuant to a provision in the parties' lease agreement authorizing attorneys' fees to the prevailing party not to exceed $1,000. Aprea appealed, and we affirmed. (*Nash v. Aprea* (Mar. 13, 2023, No. B319309) [nonpub. opn.].)

While the appeal was pending, the trial court granted in part Nash and O'Connor's motion under Code of Civil Procedure[1] section 685.080, subdivision (a), for an order allowing their costs of enforcing the judgment. The court awarded $27,721 in attorneys' fees under section 685.040, which allows as an award of costs attorneys' fees incurred in enforcing a judgment "if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of Section 1033.5." Section 1033.5, subdivision (a)(10)(A), in turn, provides that attorneys' fees may be awarded as costs where authorized by contract.

In this appeal, Aprea contends the trial court erred in awarding over $1,000 in attorneys' fees for enforcing the judgment because the lease authorized attorneys' fees "not to exceed $1,000." However, once the judgment was entered, the terms of the lease, including the $1,000 limitation on fees, were merged into and extinguished by the judgment. Because the judgment included an award of attorneys' fees authorized by

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

contract, section 685.040 allowed an award of reasonable attorneys' fees incurred in enforcing the judgment. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Lawsuit and Judgment*

Nash and O'Connor filed this lawsuit against Aprea in August 2021. Their complaint alleged causes of action for breach of written contract, breach of oral contract, breach of the covenant of good faith and fair dealing, and bad faith retention of a security deposit in violation of Civil Code section 1950.5. As alleged, Nash and O'Connor entered into a written residential lease agreement (lease) with Aprea to rent her Los Angeles home for six months beginning in August 2020 for $8,000 per month, and they paid her $64,000 ($48,000 in rent plus a $16,000 security deposit). During their tenancy they discovered mold on the premises, and they reached an agreement with Aprea to receive an $8,000 credit. However, after they vacated the home in February 2021, Aprea did not pay the credit, return their security deposit, or identify claimed deductions from the deposit. Nor did Aprea respond to a June 2021 demand letter seeking the credit and deposit.

The complaint attached and incorporated the lease. Paragraph 36 of the lease, which utilized a form published by the California Association of Realtors, was titled "Attorney Fees" and stated, "In any action or proceeding arising out of this Agreement, the prevailing party between Landlord and Tenant shall be entitled to reasonable attorney fees and costs, collectively not to exceed $1,000 . . . ." Nash and O'Connor's prayer for relief sought compensatory damages of at least $24,000, statutory

3

damages under Civil Code section 1950.5, prejudgment interest, reasonable attorneys' fees, and costs.

On September 2, 2021 Nash and O'Connor filed a proof of service of the summons and complaint by substituted service at Aprea's house. Aprea did not file an answer, and Nash and O'Connor filed a request for entry of default, which the court clerk entered on September 22. Nash and O'Connor subsequently filed a request for entry of default judgment in the amount of $59,191, comprising $56,000 in damages, $1,533 in prejudgment interest, $1,000 in attorneys' fees, and $658 in costs. In a supporting declaration, Nash and O'Connor's attorney stated the $1,000 requested in attorneys' fees was "as provided for and fixed by paragraph 36 of the Lease." On November 10, 2021 the trial court entered a default judgment against Aprea for $59,191, including $1,000 in attorneys' fees and $658 in costs.[2]

On November 29, 2021 Aprea filed a motion to vacate entry of default and default judgment. The trial court denied the motion, and a later motion for reconsideration, finding service was proper and Aprea had actual notice in time to defend the action. On April 8, 2022 Aprea appealed from the judgment and the order denying her motion for reconsideration; we affirmed in *Nash v. Aprea, supra*, No. B319309.

---

[2] Because paragraph 36 of the lease limited attorneys' fees and costs collectively to $1,000, the award of $1,000 in fees *plus* $658 in costs exceeded the contractual limit. However, Aprea did not challenge the award in her appeal from the judgment.

B.    *The Motion for Order Allowing Costs of Enforcing the Judgment*

On May 20, 2022 Nash and O'Connor filed a motion for an order allowing their costs of enforcing the judgment pursuant to sections 685.040 and 685.080 (cost motion).  They argued Aprea had failed to satisfy the judgment, refused reasonable settlement offers, and filed unsuccessful motions to vacate the judgment, causing them "to undertake substantial post-judgment efforts in enforcing the judgment and collecting the amount owed." (Capitalization omitted.)  The cost motion listed several cost items recoverable under the Enforcement of Judgments Law (EJL; § 680.010 et seq.), including fees related to the issuance and recording of the abstract of judgment, issuance of a writ of execution, notice of a judgment lien, and filing fees and expenses, totaling less than $500.  The motion also sought postjudgment interest of $3,534.

The lion's share of the requested costs was for $58,068 in attorneys' fees that had been or were expected to be incurred in postjudgment litigation.  Nash and O'Connor argued the fees were allowable as costs under section 685.040 because the default judgment included an award of attorneys' fees authorized by the lease, but the $1,000 cap on fees in the lease did not limit the award because the judgment extinguished the lease.  The motion utilized a lodestar analysis, multiplying the attorneys' rates by the hours the attorneys claimed had been expended to enforce the judgment.[3]

---

[3]    The declaration of Nash and O'Connor's attorney filed in support of the motion is not part of the record on appeal. However, Apria does not challenge the amount of the fees

5

In her opposition and supplemental memorandum, Aprea argued (as she does on appeal) that because section 685.040 authorizes attorneys' fees for enforcement only if the underlying judgment includes attorneys' fees pursuant to section 1033.5, subdivision (a)(10)(A), which in turn only allows recovery of attorneys' fees as costs when authorized by contract, Nash and O'Connor were not entitled to any additional fees for enforcement of the judgment because the lease limited attorneys' fees to $1,000. Thus, Aprea argued, the statutory scheme "trumps [the] merger doctrine" and "does not authorize collections above the $1,000 limit incorporated by reference."

After a hearing, on June 16, 2022, the trial court granted the cost motion in part. The court allowed the cost items relating to the abstract of judgment, judgment lien, writ of execution, and filing fees, totaling $481, but denied the request for postjudgment interest. The court found that Nash and O'Connor were entitled to attorneys' fees, but most of the claimed fees were incurred in opposing Aprea's motions to vacate and for reconsideration, not to enforce the judgment. The court allowed Nash and O'Connor to recover $27,240 in attorneys' fees for the time spent litigating the cost motion.

The trial court rejected Aprea's argument that the $1,000 fee limitation in the lease barred Nash and O'Connor from recovering additional attorneys' fees. The court relied on the holding in *Globalist Internet Technologies, Inc. v. Reda* (2008) 167 Cal.App.4th 1267, 1273-1274 (*Globalist*) that a plaintiff's right to postjudgment fees is based on an award of fees in the

awarded on appeal, arguing only that the $1,000 limit should have applied.

6

judgment, not the original contract. Therefore, the trial court held, "the contract's $1,000 limit does not apply to judgment creditors' fees incurred enforcing the judgment. The judgment includes some amount of contractual attorney fees, [and] therefore judgment creditors may recover attorney fees as costs under CCP § 685.040."

On July 25, 2022 the trial court entered an amended judgment for $86,912, combining the amount of the original judgment ($59,191) plus the $27,721 in enforcement costs allowed in the June 16, 2022 order. Aprea timely appealed.[4]

## DISCUSSION

A.    *Recovery of Attorneys' Fees as Enforcement of Judgment*
      *Costs Under Section 685.040*

Section 685.040 states, "The judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment. Attorney's fees incurred in enforcing a judgment are not included in costs collectible under this title [the EJL] unless otherwise provided by law. Attorney's fees incurred in enforcing a

---

[4]    Aprea's August 12, 2022 notice of appeal states she is appealing from the trial court's June 16, 2022 order as a postjudgment order appealable under section 904.1, subdivision (a)(2). Because the July 25 amended judgment incorporated the amount of costs awarded in the June 16 order, we liberally construe Aprea's appeal as one taken from the amended judgment. (Cal. Rules of Court, rule 8.100(a)(2).) However, we do not consider the documents included in the parties' appendices relating to motions for additional costs of enforcement filed after Aprea's notice of appeal, including Nash and O'Connor's request for a second amended judgment.

7

judgment are included as costs collectible under this title if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of Section 1033.5." Section 1033.5, subdivision (a)(10)(A), provides, "The following items are allowable as costs under Section 1032 . . . [¶] . . . Attorney's fees, when authorized by . . . [¶] . . . Contract."

"Thus, there are two requirements before a motion for an award of postjudgment attorney fees may be awarded as costs: (1) the fees must have been incurred to 'enforce' a judgment; and (2) the underlying judgment had to include an award for attorney fees pursuant to Code of Civil Procedure section 1033.5, subdivision (a)(10)(A), which provides that attorney fees may be awarded when authorized by contract." (*Jaffe v. Pacelli* (2008) 165 Cal.App.4th 927, 935 (*Jaffe*); accord, *Guo v. Moorpark Recovery Service, LLC* (2021) 60 Cal.App.5th 745, 750 (*Guo*); *Cardinale v. Miller* (2014) 222 Cal.App.4th 1020, 1025 (*Cardinale*); *Globalist, supra*, 167 Cal.App.4th at p. 1275.)

"[T]he award of postjudgment attorney fees is not based on the survival of the contract, but is instead based on the award of attorney fees and costs in the trial judgment. [Citation.] This is in accord with the extinction by merger analysis providing that postjudgment rights are governed by the rights in the judgment and not by any rights arising from the contract." (*Jaffe, supra*, 165 Cal.App.4th at p. 935; accord, *Gray1 CPB, LLC v. SCC Acquisitions, Inc.* (2015) 233 Cal.App.4th 882, 890 (*Gray1*); *Cardinale, supra*, 222 Cal.App.4th at p. 1026; *Globalist, supra*, 167 Cal.App.4th at pp. 1273-1274.) As the *Jaffee* court explained, "[W]hen a judgment is rendered on a case involving a contract that includes an attorney fees and costs provision, the 'judgment

8

extinguishes all further contractual rights, including the contractual attorney fees clause.'" (*Jaffe*, at p. 934; accord, *Cardinale*, at p. 1026.) Accordingly, "we look to the judgment rather than the contract itself when determining a party's entitlement to fees." (*Guo, supra*, 60 Cal.App.5th at p. 751.)[5]

Under section 685.080, a judgment creditor may claim costs of enforcement, including allowable attorneys' fees, by filing and serving on the judgment debtor a motion describing the claimed costs, supported by an affidavit of a knowledgeable person, upon which the court must make "an order allowing or disallowing the costs to the extent justified under the circumstances of the case." (§ 685.080, subd. (c).)[6]

---

[5] In 1992 the Legislature added the last sentence of section 685.040 (providing for attorneys' fees in enforcing a judgment) to abrogate the holding in *Chelios v. Kaye* (1990) 219 Cal.App.3d 75 that under the merger doctrine, "the statute did not authorize awarding a judgment creditor attorney fees for enforcement despite an underlying judgment allowing such fees pursuant to a contract provision." (*Conservatorship of McQueen* (2014) 59 Cal.4th 602, 609; accord, *Gray1, supra*, 233 Cal.App.4th at p. 890.) Notably, "[t]he amendment did not abrogate *Chelios*'s holding that contractual rights merge into the judgment. Rather, the amendment provided for the inclusion of postjudgment attorney fees as costs when the contract provided for attorney fees and attorney fees were initially included in the judgment." (*Gray1*, at p. 890.)

[6] A judgment creditor may alternatively claim the costs of enforcement by filing and serving a memorandum of costs, in which case the judgment debtor must timely file a motion to tax costs. (§ 685.070, subds. (a)-(d).) Nash and O'Connor filed both a memorandum of costs and their cost motion. Although Aprea did not file a motion to tax costs in response to the memorandum of costs, the trial court found "[i]t would be unfair and unnecessary

9

Although we generally review an award of attorneys' fees for an abuse of discretion (*Guo, supra*, 60 Cal.App.5th at p. 749; *Jaffe, supra*, 165 Cal.App.4th at p. 934), where, as here, "'the issue is whether the trial court had the *authority* pursuant to section 685.040 to issue such an award,'" we review the legal issue de novo. (*Guo*, at pp. 749-750; accord, *Jaffe*, at p. 934.)

B.    *The Trial Court Did Not Err in Allowing Attorneys' Fees as Enforcement Costs*

The trial court's award of attorneys' fees met both requirements for allowing postjudgment attorneys' fees under section 685.040, as set forth *Jaffe, supra*, 165 Cal.App.4th at page 935 and its progeny. As to the first requirement, Aprea does not dispute that the $27,240 in attorneys' fees awarded by the trial court—which included only those fees incurred in connection with litigating the cost motion—were fees "incurred to 'enforce' a judgment." With respect to the second requirement that "the underlying judgment had to include an award for attorney fees pursuant to Code of Civil Procedure section 1033.5, subdivision (a)(10)(A)" (*Jaffe*, at p. 935), Aprea argues the attorneys' fees included in the judgment were not authorized by contract because the judgment (on Judicial Council form JUD-100) did not mention the lease, and the complaint likewise only sought reasonable attorneys' fees without mentioning the lease. However, the lease was attached to the complaint, and Nash and O'Connor's motion for entry of default judgment likewise attached the lease and stated in a supporting declaration that the requested $1,000 in attorneys' fees was "as provided for and fixed

to require [Apria] to file both a motion to tax costs and oppose the motion to fix costs." Nash and O'Connor do not argue otherwise.

10

by paragraph 36 of the Lease." Accordingly, the trial court's award of $1,000 in attorneys' fees in the default judgment was an award of attorneys' fees pursuant to section 1033.5, subdivision (a)(10)(A).

Aprea contends that because section 1033.5, subdivision (a)(10)(A), only allows attorneys' fees when authorized by contract, and the lease only authorized fees not to exceed $1,000, this limited authorization was necessarily incorporated into an award allowed in enforcement proceedings pursuant to section 685.040. Apria's argument has superficial appeal: If Nash and O'Connor were authorized as prevailing parties in the underlying action to recover only $1,000 in attorneys' fees pursuant to section 1033.5, subdivision (a)(10)(A), why can they now recover almost 30 times as much as judgment creditors in enforcing the judgment based on section 685.040, which expressly references section 1033.5?

The answer lies in the statutory language—as discussed, section 685.040 provides that attorneys' fees are allowed "if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of Section 1033.5." Thus, there need only be an award of contractually authorized fees to open the door to recovery of postjudgment fees as enforcement costs. We decline Aprea's invitation to read into section 685.040 an additional requirement that there not only be an award of attorneys' fees in the judgment "pursuant to" section 1033.5, subdivision (a)(10)(A) (that is, the judgment awarded fees based on an attorneys' fees provision in a contract), but that any enforcement fees also be expressly authorized by the underlying contract. (See *McHugh v. Protective Life Ins. Co.* (2021) 12 Cal.5th 213, 227 [When

11

interpreting a statute, "[w]e first consider the words of the statutes, as statutory language is generally the most reliable indicator of legislation's intended purpose. [Citation.] We consider the ordinary meaning of the relevant terms, related provisions, terms used in other parts of the statute, and the structure of the statutory scheme."].)

Our interpretation of the language in section 685.040 is consistent with the merger doctrine, which recognizes that "[u]pon entry of judgment, all further contractual rights are extinguished, and the plaintiff's rights"—and in this case, the limitation on plaintiff's rights—"are thereafter governed by the rights on the judgment, not by any rights which might have been held to have arisen from the contract." (*Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1766, 1770; accord, *Guo, supra*, 60 Cal.App.5th at p. 751; *Globalist, supra*, 167 Cal.App.4th at p. 1274; *Jaffe, supra*, 165 Cal.App.4th at p. 935.) As discussed, the Legislature in drafting the current version of section 685.040 did not intend to abrogate the merger doctrine, but rather, to ensure that a judgment creditor could obtain attorneys' fees incurred in enforcing a judgment notwithstanding termination of their contractual rights by merger into the judgment. (*Conservatorship of McQueen* (2014) 59 Cal.4th 602, 609-610; *Gray1, supra*, 233 Cal.App.4th at p. 890.)[7] The Legislature could easily have specified that

---

[7] Apria relies on language in a Senate Judiciary Committee report in connection with the 1992 amendments to section 685.040 that stated "the proposed amendment would 'assure that contract provisions which provide for attorneys' fee[s] are enforceable *regardless of whether they are incurred in enforcing the judgment or in an appeal of the judgment.*'" (*Conservatorship of McQueen, supra*, 59 Cal.4th at p. 610,

contractual limitations on attorneys' fees apply in enforcement proceedings. It did not.

Although Apria is correct that most appellate courts that have considered section 685.040 have not addressed whether contractual limits on attorneys' fees survive merger, we find persuasive the reasoning in *Cardinale, supra*, 222 Cal.App.4th pages 1025 to 1026. There, Noreen Cardinale won a money judgment against Daniel Miller based on breach of contract, fraud, and other claims arising from an abusive loan scheme. (*Id.* at pp. 1022-1024.) The judgment against Miller included an award of contractual attorneys' fees. (*Id.* at p. 1025, fn. 8.) Cardinale subsequently sued Miller and the brokers who engaged in a refinancing scheme with him for fraudulent transfer and conspiracy, alleging they conspired to prevent satisfaction of Cardinale's judgment. Cardinale prevailed at trial, and the trial court awarded nearly $300,000 in attorneys' fees against the brokers under section 685.040. (*Id.* at p. 1025.)

---

quoting Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2616 (1991-1992 Reg. Sess.) as amended Aug. 12, 1992, p. 5.) Apria argues this language shows the merger doctrine did not remove the contractual limit on attorneys' fees. However, as the Supreme Court explained in *McQueen*, the legislative purpose of the amendment was to ensure the availability of attorneys' fees arising from a contract at the enforcement phase despite the merger doctrine (not to preserve the specific terms of the contract). (See *McQueen*, at pp. 609-610 [the "committee report noted that the contrast between the *Chelios* result—contractually authorized fees could not be recovered for enforcement of the judgment—and the settled rule that such fees *could* be recovered in an appeal"].)

13

The Court of Appeal affirmed the attorneys' fees award, concluding as to the brokers that although they were not parties to the underlying contract, the two requirements for an award of postjudgment attorneys' fees articulated by *Jaffe, supra*, 165 Cal.App.4th at page 935 had been met. (*Cardinale, supra*, 222 Cal.App.4th at p. 1025.) The court explained, "While in the usual scheme of things the target of a fee motion under section 685.040 is presumably the original judgment debtor, the Legislature did not so restrict the provision's scope." (*Id.* at p. 1025.) The court continued, "Nor is it critical here that the [brokers] were not parties to the contractual fee provision between Miller and Cardinale. As *Jaffe* explains, '[g]enerally, when a judgment is rendered in a case involving a contract that includes an attorney fees and costs provision, the "judgment extinguishes all further contractual rights, including the contractual attorney fees clause."' [Citation.] . . . [The brokers'] status as strangers to Cardinale's contract with Miller does not immunize them from liability under section 685.040." (*Id.* at p. 1026.)

Although we have reservations whether section 685.040 supports an attorneys' fees award against a nonparty to a contract, that question is not before us. But we agree with *Cardinale*'s reasoning that under the merger doctrine the specific limitations of the contract (including the $1,000 limit here) no longer apply once the judgment is entered, and instead, the operative question in considering whether fees are available as enforcement costs under section 685.040 is simply whether the judgment included attorneys' fees awarded pursuant to a contract because the ""judgment extinguishes all further contractual

14

rights, including the contractual attorney fees clause.""" (*Cardinale, supra*, 222 Cal.App.4th at p. 1026.)[8]

## DISPOSITION

The amended judgment is affirmed.  Nash and O'Connor are to recover their costs on appeal.

FEUER, J.

We concur:

PERLUSS, P. J.          SEGAL, J.

---

[8]     Aprea's argument that claim preclusion bars Nash and O'Connor from recovering additional attorneys' fees without "'actual litigation'" of their right to recover attorneys' fees over $1,000 fails to address the law under section 685.040 that prior contract terms are merged into the judgment.  Aprea's reliance on *Sukut Construction, Inc. v. Cabot, Cabot & Forbes Land Trust* (1979) 95 Cal.App.3d 527, 529-531 to support her argument is misplaced.  In *Sukut*, the Court of Appeal concluded that claim preclusion applied to bar the plaintiff's action to foreclose a mechanic's lien against parcels of property because the claim was "encompassed" by a prior foreclosure action.  (*Id.* at p. 531.) *Sukot* involved only claim preclusion (that the action to enforce the lien reasserted a right litigated in a prior action), not the EJL.  Apria's final argument that Nash and O'Connor waived their right to attorneys' fees over $1,000 fares no better, simply recycling her argument the lease survives the judgment.

15